# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45681

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

RYAN D. TURNAGE,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: May 17, 2019

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Madison County. Hon. Gregory W. Moeller, District Judge.

Judgment of conviction and sentence for possession of methamphetamine and possession of paraphernalia, affirmed; original and first amended restitution orders, affirmed; second amended restitution order vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Ryan D. Turnage appeals from his conviction for possession of methamphetamine and of paraphernalia. Turnage argues the district court abused its discretion by sentencing him without an evaluation under Idaho Code § 19-2524 and deprived him of his Sixth Amendment right to counsel during restitution proceedings. We affirm Turnage's conviction, his sentence, and the original and first amended restitution orders, but we vacate the district court's second amended restitution order and remand.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Turnage with possession of methamphetamine and of paraphernalia after officers found two baggies and a syringe of methamphetamine in a car Turnage was

1

driving. At trial, forensic scientists testified that the baggies and the syringe contained methamphetamine and that DNA taken from the syringe's needle matched Turnage's DNA. The jury found Turnage guilty of both charges.

The district court ordered the preparation of a presentence investigation report (PSI) and an evaluation under I.C. § 19-2524 to determine the need for a substance abuse disorder assessment or a mental health examination. At the sentencing hearing, the district court noted that it had ordered presentencing reports, including the evaluation, but that the evaluation was not completed because Turnage "had been in custody too long for them to administer [it] and obtain reliable results." After noting the evaluation had not been completed, the district court then inquired whether Turnage's trial counsel needed clarification or correction of any of the presentencing reports and specifically asked, "Any objection if I rely upon those reports?" to which Turnage's trial counsel responded, "No objection." Additionally, Turnage's trial counsel urged the district court to place Turnage on probation and asserted probation would allow Turnage to eventually obtain an evaluation. The district court sentenced Turnage to six years with two years determinate and retained jurisdiction.

Additionally, the district court indicated it would award full restitution and ultimately entered three separate restitution orders. During the sentencing hearing, the district court stated: "I'm going to order restitution paid in full. The state has 30 days to request restitution. If I grant it, the defense will have 30 days to object and [to] request a hearing." Within the thirty days allowed, the State filed a motion for restitution seeking repayment of forensic laboratory charges and a police officer's hourly charges in the total amount of $2,757.30. The district court granted the State's motion the following day. Turnage's trial counsel did not challenge this original restitution order, and on December 26, 2017, Turnage timely filed a notice of appeal.

Approximately two weeks after Turnage appealed, the State filed a second motion for restitution on January 8, 2018, seeking repayment of two additional police officers' hourly charges in the amount of $1,711.26. Two days later, on January 11, the district court granted the State's motion and entered a first amended restitution order. As with the original restitution order, Turnage's trial counsel did not challenge the first amended restitution order.

Then, on January 25, 2018, Turnage's trial counsel moved to withdraw. The reason stated for the motion was to allow the State Appellate Public Defender's Office (SAPD) to handle Turnage's appeal. On January 29, the district court granted the motion, entering an order

2

both appointing the SAPD to represent Turnage in this appeal and allowing trial counsel to "withdraw from this matter" (appointment/withdrawal order). The district court served this appointment/withdrawal order on the State, on Turnage's trial counsel, and on the SAPD.

On January 31--two days after the district court entered its appointment/withdrawal order--the State filed yet another motion for restitution seeking repayment of additional forensic laboratory charges in the amount of $735.00. The State served its motion on Turnage's trial counsel despite the district court having entered its appointment/withdrawal order two days earlier. The State, however, did not serve the SAPD with its motion for additional restitution, even though by January 31 the SAPD was technically representing Turnage. On February 1, the district court granted the State's motion and entered a second amended restitution order. Just like the State, the district court only served this second amended restitution order on Turnage's trial counsel; it did not serve the order on the SAPD. On appeal, Turnage challenges his sentence and the district court's first amended and second amended restitution orders.[1]

## II.

## STANDARD OF REVIEW

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court conducted a comprehensive analysis of the fundamental error doctrine. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.[2]

---

[1]   Turnage makes no challenge as to the district court's original restitution order, which remains enforceable.

[2]   The Idaho Supreme Court recently clarified prongs two and three of the *Perry* analysis in *State v. Miller*, ____ Idaho ____, ____ P.3d ____ (2019), *reh'g pending*. *Miller* is not yet

3

**A.      Sentencing Without an Evaluation Under I.C. § 19-2524 Is Not Fundamental Error**

Turnage argues that, by not requiring an evaluation under I.C. § 19-2524 before sentencing him, the district court did not act consistently with that statute and abused its discretion.  The State responds that the district court essentially waived the requirement of an evaluation under I.C. § 19-2524(2)(a) by proceeding without an evaluation and that Turnage failed to object and thereby failed to preserve the error for appeal.

We agree with the State.  Turnage failed to object to the district court proceeding without an evaluation.  Furthermore, Turnage's counsel expressly stated there was no objection to the district court relying on the PSI without an evaluation and expressly argued that Turnage could eventually be evaluated at a later date if allowed probation.  Because Turnage failed to object, his challenge to his sentence only prevails if he can show fundamental error.  We conclude that he cannot show fundamental error.

The Idaho Supreme Court's decision in *State v. Carter*, 155 Idaho 170, 307 P.3d 187 (2013), supports this conclusion.  In that case, Carter was charged with aggravated battery on a correctional officer.  *Id.* at 171, 307 P.3d at 188.  After Carter pled guilty, his defense counsel requested that Carter's psychiatric records be included in his PSI.  *Id.*  Regardless, the PSI did not include Carter's psychiatric records; Carter did not request a psychological evaluation pursuant to I.C. § 19-2522; and the district court sentenced Carter without the aid of any psychological evaluation.  *Id.* at 172, 307 P.3d at 189.  Carter conceded on appeal that he failed to object to the lack of an evaluation but argued the district court failed to sua sponte order a psychological evaluation.  *Id.* at 173, 307 P.3d at 190.

The *Carter* Court held that the fundamental error analysis is the proper analysis to determine whether an appellate court may review unobjected-to errors "in all phases of criminal proceedings in the trial courts," including unobjected-to sentencing errors.  *Id.* at 174, 307 P.3d at 191.  The Court further concluded Carter's claim failed to satisfy the threshold requirement in *Perry*, i.e., that the error violated an unwaived constitutional right, because Carter's claim that

finalized; however, it did not affect prong one of the *Perry* analysis, which is the prong at issue in this case.

the district court failed to comply with I.C. § 19-2522 was based on a statutory violation, not a constitutional violation. *Id.*

As in *Carter*, Turnage's challenge turns on a purported statutory violation. Turnage asserts the district court sentenced him without a statutorily-mandated evaluation and, thus, acted inconsistently with I.C. § 19-2524. This argument implicates a statutory violation, not the violation of an unwaived constitutional right as *Perry* requires. For this reason, Turnage fails to demonstrate fundamental error, and we affirm his sentence.

**B.** **Turnage's Representation During Restitution Proceedings Is Unclear**

Turnage challenges both the district court's first amended and second amended restitution orders. He argues that restitution is a "critical stage" of a criminal prosecution during which his Sixth Amendment right to counsel is guaranteed and that the district court violated this constitutional right by allowing his trial counsel to withdraw during restitution proceedings. The State responds that restitution is not a "critical stage" and that, regardless, Turnage was represented at all times because the district court appointed the SAPD to represent Turnage at the same time the district court allowed Turnage's trial counsel to withdraw.

With regard to the first amended restitution order, Turnage's argument is without merit. As noted above, the State moved for a first amended restitution order on January 8 and served that motion on Turnage's trial counsel. Then, the district court entered the first amended restitution order on January 11 and also served it on Turnage's trial counsel. The district court did not enter its appointment/withdrawal order allowing Turnage's trial counsel to withdraw until January 29, more than two weeks later. For this reason, Turnage was undisputedly represented by trial counsel at the time of the first amended restitution order. Thus, his claim that he was deprived of his right to counsel for purposes of that order fails.

What is unclear from the record, however, is whether Turnage's trial counsel continued to represent Turnage for purposes of the restitution proceedings after the SAPD's appointment. The district court's appointment/withdrawal order is not limited or conditioned in any manner but rather simply states Turnage's trial counsel is "hereby allowed to withdraw from this matter." Although this language suggests Turnage's trial counsel was allowed to withdraw for all purposes, both the district court and the State proceeded contrary to this suggestion. Despite the entry of the appointment/withdrawal order, the State continued to serve Turnage's trial counsel as if he remained counsel for purposes of the restitution proceedings. Specifically, two days

5

after the appointment/withdrawal order, the State served Turnage's trial counsel with its motion for a second amended restitution order. Likewise, the following day, the district court served Turnage's trial counsel with its second amended restitution order.

The district court's and the State's continued service of Turnage's trial counsel after the appointment/withdrawal order suggests that Turnage's trial counsel continued to represent Turnage for purposes of restitution proceedings. Perhaps, as with both the original and first amended restitution orders, Turnage's trial counsel made the decision not to object to the second amended restitution order--a decision which would obviously not be apparent from the record. Based on the district court's and the State's continued service of restitution filings on Turnage's trial counsel after the appointment/withdrawal order, whether Turnage's trial counsel continued to represent Turnage regarding the second amended restitution order is unclear from the record.

What is clear, however, is that the SAPD did not have responsibility for Turnage's restitution proceedings. The State's argument that the SAPD's representation satisfied any right to counsel during the restitution proceedings ignores that the SAPD's representation is statutorily limited to appeals and capital post-conviction cases. *See, e.g.*, I.C. § 19-870. The SAPD's limited authority does not extend to restitution proceedings. Moreover, the SAPD did not have adequate notice to timely assist Turnage during the restitution proceedings (assuming there were some assistance it could give) because neither the State nor the district court served the SAPD with any motions or orders in the restitution proceedings. For these reasons, the SAPD did not represent Turnage for purposes of his restitution proceedings, including for the purpose of any challenge to the district court's second amended restitution order entered after the SAPD's appointment.

Because the State's and the district court's actions call into question whether Turnage's trial counsel continued to represent Turnage for purposes of the second amended restitution order, we decline to consider whether the district court unconstitutionally denied Turnage his Sixth Amendment right to counsel. Rather, we remand for consideration of whether Turnage's trial counsel did in fact continue to represent Turnage in the restitution proceedings despite the SAPD's appointment for appellate purposes.

## IV.

## CONCLUSION

Turnage failed to demonstrate the district court committed fundamental error by sentencing him without an evaluation under I.C. § 19-2524. Further, Turnage's claim that he was denied counsel for purposes of the first amended restitution order fails. Accordingly, we affirm Turnage's sentence and the district court's original and first amended restitution orders. However, we vacate the second amended restitution order and remand for consideration of whether Turnage's trial counsel continued to represent Turnage for purposes of that order.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.